UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TANYA NEMCIK,<br><br>    Plaintiff,<br><br>v.<br><br>EDWARD MILLS, et al.,<br><br>    Defendants. | Case No. 16-cv-00322-BLF<br><br>**OMNIBUS ORDER REGARDING PENDING MOTIONS BY DEFENDANTS TO DISMISS OR STRIKE THE FAC AND BY PLAINTIFF FOR A STAY AND TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>[Re: ECF 40, 43, 50, 51, 59, 75, 84] |

This action arises out of child custody proceedings in the California state courts. Plaintiff Tanya Nemcik ("Nemcik") alleges that based on an erroneous child support order against her in family law proceedings in Santa Clara County Superior Court she faces a mountain of debt she cannot possibly pay. She further alleges that she has been found in contempt of that child support order and believes that she will be remanded to jail at an upcoming November 8, 2016, state court hearing if this Court fails to halt the state court proceedings.

In this lawsuit, Nemcik brings several causes of actions grounded in the state court's allegedly improper calculation of her child support. Pending before the Court are the following motions: (1) Defendant Stacey Stevens' ("Stevens") anti-SLAPP motion to strike the tenth,

thirteenth, and fourteenth causes of action, ECF 40; (2) Stevens' motion to dismiss, ECF 43; (3) Defendants Georgie Ku ("Ku") and Edward Mills' ("Mills") motion to dismiss, ECF 50; (4) Defendants Evalina Barth ("Barth") and Department of Child Support Service of Santa Clara County's ("DCSS") motion to dismiss, ECF 51; (5) Defendant Victoria Henley's ("Henley") motion to dismiss, ECF 59; (6) Nemcik's motion to stay, ECF 75; and (7) Nemcik's motion for a temporary restraining order, ECF 84.

For the reasons stated herein, the Court rules as follows: (1) GRANTS Stevens' motion to strike with leave to amend; (2) GRANTS Stevens' motion to dismiss with leave to amend; (3) GRANTS Ku and Mills' motion to dismiss without leave to amend; (4) GRANTS Barth and DCSS's motion to dismiss without leave to amend; (5) GRANTS Henley's motion to dismiss with leave to amend; (6) DENIES Nemcik's motion to stay; and (7) DENIES Nemcik's motion for a temporary restraining order.

## I. BACKGROUND

The following allegations are taken from Nemcik's first amended complaint ("FAC"). ECF 17. In April 2009, Nemcik filed a child custody action in Contra Costa Superior Court. FAC ¶ 17. The Respondent in that case filed for support, which was set for a hearing before Judge Fannin in Contra Costa on April 24, 2012. FAC ¶ 18.

In June 2013, DCSS allegedly received a change of venue but did not receive any indication that Nemcik had been informed of this change. FAC ¶ 19. Nemcik did not learn of the change in venue until October 2013 when her wages were being garnished by DCSS. FAC ¶ 20. Nemcik contacted DCSS, was assigned a caseworker, and objected to the change of jurisdiction. FAC ¶ 20. Her case was assigned to a commissioner on March 24, 2014 who denied her objection to the change of jurisdiction. FAC ¶ 21.

Nemcik also objected to having a commissioner preside over her child support matter and requested a judge review her child support. FAC ¶ 22. She alleges that her child support was incorrectly set and wanted it recalculated. *Id*. The clerk told her that her case would be heard by a judge but instead it was assigned to Commissioner Kristine McCarthy on June 19, 2014. FAC ¶ 23. Nemcik, again, objected to having a commissioner and objected to the change of venue. *Id*.

Nemcik also asked for documentation reflecting that she had been provided with the change of venue motion. *Id*. Commissioner McCarthy continued her matter to September 5, 2014. *Id*.

On September 5, 2014, Commissioner McCarthy provided Nemcik with a proof of service signed by Rick Secrist. FAC ¶ 24. The proof of service indicated that Secrist had personally served the documents on Nemcik on October 13, 2013. *Id*. Nemcik alleges that she only had 20 days from June 18, 2013 to object to the change of venue but the proof of service indicates that she was not notified of the change of venue until 117 days after it was filed. FAC ¶ 25.

Commissioner McCarthy continued Nemcik's matter to December 4, 2014. FAC ¶ 26. She denied Nemcik's request for a judge, awarded sanctions to Stevens, and the case was assigned to Commissioner Joseph Irwin. FAC ¶¶ 26-27. In front of Commissioner Irwin, Nemcik filed a motion for recusal, an objection to having a commissioner, and requested a judge. FAC ¶ 27.

Her case was then assigned to Commissioner Edward Mills and a hearing was set for February 20, 2015. FAC ¶ 28. In front of Commissioner Mills, Nemcik objected to having a commissioner and requested a judge, which were both denied. *Id*.

At some point after this, Nemcik was told that she would be assigned a judge. FAC ¶ 29. However, her matter was scheduled with a traffic court judge, and then her matter was assigned back to Commissioner Mills. *Id*.

According to Nemcik, she had four hearings in 2014 and six hearings in 2015, which all arose out of her motion seeking a judge to preside over her matter. FAC ¶ 30. Nemcik alleges that it was not until January 2016 before Commissioner Mills finally ruled on her request and stated that he would not allow her request for a judge and he would not remove himself from her case. *Id*.

Nemcik alleges that constant litigation driven by Respondent's attorney Stacey Stevens, the court, and DCSS was a major factor in her inability to keep or obtain employment. FAC ¶ 31. She alleges that Stevens filed multiple requests with Nemcik's employer even after they had provided all the documentation she requested. *Id*. She claims that Stevens and Commissioner Mills conspired to interfere with her ability to seek employment and that Stevens and DCSS contacted her "potential employers to the point that she would not get hired." FAC ¶ 33. As a

result, Nemcik claims that DCSS interfered with her ability to find employment at a level imputed by Commissioner Mills. FAC ¶34. She alleges that she is over $80,000 in debt, and that this debt shows up on her credit history, negatively affects her credit score, and negatively impacts her ability to find a job. FAC ¶34.

During her time in state court, Nemcik alleges that she sought accommodations under the Americans with Disabilities Act on April 14, 2014.[1] FAC ¶¶ 35, 36. On May 9, 2014, Ku responded with a letter that stated "This response is drafted on behalf of Commissioner Edwards Mills," and explained the accommodations granted and denied to Nemcik. FAC ¶ 36.

On January 5, 2015, Ku sent another letter stating that "This response has been authorized by Commissioner." FAC ¶ 37. This letter also explained accommodations that were granted and denied to Nemcik. *Id*. Nemcik alleges that these letters are evidence that Ku is not independent of the commissioner and that Commissioner Mills "effectively denied [her] accommodations." *Id*.

Nemcik also notes that she had been granted accommodations in Contra Costa, including having a recording device during hearings. FAC ¶ 38. Commissioner Mills did not allow Nemcik to have a recording device and did not allow her to have tools that would allow her to understand how her child support was calculated. FAC ¶ 42. According to Nemcik, all of Defendants' actions have exacerbated her condition and made it difficult for her to communicate with the court and participate in the litigation process. FAC ¶¶ 39, 41.

As to her child support, Nemcik alleges that her support order requires her to make a minimum salary of $150,000. FAC ¶ 43. Nemcik alleges that this is higher than any annual salary she has ever made. *Id*. Nemcik believes Commissioner Mills should not be entitled to immunity since "he made all the calculations on his own and acted in lieu of the persons generally charged with calculating these support orders…." *Id*. Nemcik alleges that had she been afforded her accommodations, she could have followed along, verified his calculations, and addressed any errors during the hearing. FAC ¶ 45.

Nemcik also alleges that after Commissioner Mills yelled at her, she filed a complaint with

---

[1] Out of respect for Nemcik's privacy, the Court does not describe in detail the basis for Nemcik's request for accommodations under the ADA.

4

the Commission for Judicial Performance ("CJP"). FAC ¶ 118. In response, she received a letter indicating that her complaint should be addressed to the Presiding Judge because Mills was a commissioner and that if the Presiding Judge did not act, then a complaint could be filed with the CJP. *Id*. Nemcik alleges she filed a complaint with the Presiding Judge of Contra Costa County about Commissioner Mills and when that judge did not act, she filed a complaint with the CJP. FAC ¶¶ 119-120. According to Nemcik, the CJP did not respond to her complaint. FAC ¶ 121. Nemcik believes that Victoria Henley, the Executive Director of the CJP, colluded with Commissioner Mills and did not review her complaint. FAC ¶¶ 125-127. She alleges by not removing Commissioner Mills, Henley must want her to appear in front of him so he can do further damages to her. FAC ¶¶133.

As a result, Nemcik brings this suit against the following individuals: Commissioner Mills for setting child support an inappropriate level, FAC ¶52, Evalina Barth for allowing or conspiring with Commissioner Mills to set child support at improper levels, FAC ¶53, Stacey Stevens for colluding with Commissioner Mills and Barth for the purpose of setting her child support at improperly high levels, FAC ¶55, Rick Secrist for lying about the service of change of venue "which has allowed unlawful child support to be calculated," FAC ¶ 72, Georgia Ku for conspiring with Commissioner Mills to deprive her of needed accommodations and setting unjust child support, FAC ¶¶ 80-84, and Victoria Henley for colluding with Commissioner Mills and causing her damage, FAC ¶¶ 117-136.

## II. LEGAL STANDARD

### A. Anti-SLAPP

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks and citations omitted). Section 425.16 of the California Code of Civil Procedure, also referred to as the anti-SLAPP statute, provides in relevant part that:

> A cause of action against a person arising from any act of that person in

> furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. P. Code § 425.16(b)(1).

Resolution of an anti-SLAPP motion is a two-step process. *Baral v. Schnitt*, --- P.3d ---, 2016 WL 4074081, at *3 (Cal. Aug. 1, 2016). "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." *Id*. (citing *Taus v. Lofton*, 40 Cal. 4th 683, 712 (2007)). Second, "[i]f the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." *Id*. Under the second step, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." *Makaeff*, 715 F.3d at 261 (internal quotation marks and citation omitted).

**B.    Rule 12(b)(6)**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient to state a claim, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

6

## III. DISCUSSION

The Court addresses the pending motions in the order that they were filed.[2]

### A. Stevens' Motion to Strike (ECF 40)

Stacey Stevens is the attorney representing the father, Brian Krippendorf in the state court child support case. Mot. 2, ECF 41. She moves to strike Nemcik's tenth cause of action for intentional interference with prospective economic advantage, thirteenth cause of action for intentional infliction of emotional distress, and fourteenth cause of action for negligence infliction of emotional distress pursuant to California's anti-SLAPP statute. *Id*. According to Stevens, these causes of action arise out of Stevens' litigation related activity and are protected as petitioning activity under the anti-SLAPP statute. *Id*. at 2-3, 5.

Nemcik responds that she is not engaged in SLAPP activities. Opp. 3, ECF 60. According to Nemcik, Stevens' alleged conduct goes beyond the scope of petitioning the court. *Id*. Nemcik explains that she recently received documents from a subpoena of reports by Ellen Gold and Joyce Kimber that had previously been concealed. *Id*. According to Nemcik, these documents were used to determine the custody of her children in closed session hearings. *Id*. Nemcik argues that this is evidence that her alleged conspiracy started before her case was transferred to Santa Clara. *Id*.

California's anti-SLAPP statute applies to litigation related conduct, provided those statements are made in connection with pending or anticipated litigation. *See, e.g.*, *Semiconductor Equip. and Materials Int'l, Inc. v. The Peer Grp., Inc.*, Case No. 15-cv-00866-YGR, 2015 WL 5535806. Here, Nemcik's tenth, thirteenth, and fourteenth causes of action relate to Stevens' litigation connected conduct. For example, the tenth cause of action alleges that Stevens intentionally interfered with Nemcik's economic relationships with employers by subpoenaing documents and taking depositions. *See, e.g.*, FAC ¶¶ 147-148. The thirteenth cause of action alleges Stevens' conduct at court hearings caused Nemcik severe emotional distress. FAC ¶¶ 192-196. The fourteenth cause of action alleges Stevens "has been reckless in her duty to make true

---

[2] The Court does not address arguments regarding Nemcik's state law claims under Rule 12(b)(6) because Nemcik has not sufficiently alleged a federal cause of action. Without a viable federal cause of action, the Court declines supplemental jurisdiction over Nemcik's state law claims.

and correct statements and her past conduct and continual actions have caused other defendants to do harm to [Nemcik]." FAC ¶ 205. All of these allegations are litigation related activities.

Nemcik's arguments in opposition overlook that the Court can only rely on the allegations in her FAC and submitted evidence in analyzing the motion to strike. Nemcik argues that Stevens' conduct goes well-beyond litigation but does not provide any allegations or evidence supporting this argument. Moreover, it is not clear whether her recently discovered documents subpoenaed from Ellen Gold and Joyce Kimber relate to Stevens or how these documents, which Nemcik believes were used in closed session hearings, are not connected to litigation.

Based on the allegations in the FAC, the Court concludes that the three state law claims against Stevens arise from activity protected by § 425.16. All alleged conduct is related to Steven's litigation activity on behalf of her client. Thus, Steven has satisfied the first prong of the anti-SLAPP motion.

The burden shifts to Nemcik to demonstrate the merit of her claim by establishing a probability of success – "a summary-judgment-like procedure." *Boral*, 2016 WL 4074081, at *3. Although Nemick did not file any evidence in support of the showing she must make, the Court has considered her verified FAC and the exhibits attached to it. Based upon all the evidence, the Court finds that all conduct alleged against Stevens would be protected under the litigation privilege under Cal. Civ. Code § 47(b). Thus, Nemcik has not met her burden under the second prong.

However, unlike state law, under federal law, the Court must allow Nemcik an opportunity to amend her complaint before finally ruling on Stevens' anti-SLAPP motion. *See Verizon Del. Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting a defendant's anti-SLAPP Motion to Strike a Plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."). Accordingly, the Court GRANTS Stevens' motion to strike and gives Nemcik an opportunity to amend her allegations.

### B. Stevens' Motion to Dismiss (ECF 43)

Stevens moves to dismiss Nemcik's first cause of action under § 1983 for two reasons.

8

First Stevens argues that Nemcik has only conclusorily alleged that her child support proceeding was improper and a violation of her due process rights. Mot. 3-5, ECF 47. For example, Nemcik does not allege that her children's father and children are living in a location that would make Santa Clara an improper venue for her child support proceedings. *Id*. at 4. Second, Stevens argues that Nemcik has not alleged Stevens acted under the color of state law. *Id*. at 4-5. Stevens also seeks to dismiss Nemcik's sixth cause of action under § 1985 because Nemcik has not alleged a class-based animus or an allegation of a racial or otherwise class-based discriminatory animus behind the conspirator's action. *Id*. at 5-6. Finally, Stevens argues that this action should be dismissed under the *Rooker-Feldman* doctrine because this is a de facto appeal of a child support order entered by Commissioner Mills. *Id*. at 8.

In opposition, Nemcik argues that private persons who conspire with state actors are acting under the color of law for purposes of § 1983. Opp. 2, ECF 60. Nemcik does not address Stevens' arguments regarding § 1985. Nemcik also states that "when this matter is properly litigated, in state [c]ourt, *Rooker-Feldman* will not take hold and the claims will be more properly cognizable by this Court." *Id*.

The Court agrees with Stevens and finds that Nemcik has not adequately alleged claims under § 1983 or § 1985. To state a claim under §1983, a plaintiff must allege that the defendant was acting under color of state law at the time the acts complained of were committed, that the acts complained of resulted in the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States, and that the plaintiff was damaged as a result. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005). Private persons may act under color of state law if they "willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989). When determining whether a private party acted under color of law, the courts must "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.1999).

Here, Nemcik has not adequately alleged that Stevens was acting in joint action with state official. Although Nemcik alleges Stevens "colluded" with DCSS, Barth, and Secrist, FAC ¶ 61

such allegations are conclusory. At the hearing, Nemcik stated she had evidence of additional conduct of Stevens conspiring with judges such as Stevens coming and going into judges' chambers. It is not clear whether Nemcik was referring to specific factual allegations with respect to Stevens and the state actors at issue in this action or whether such conduct relates to other cases. In any event, those allegations are not currently in her FAC, and as pled, her FAC is conclusory. Accordingly, the Court GRANTS with leave to amend Stevens' motion to dismiss Nemcik's § 1983 claim.

Nemcik's § 1985 claim suffers from several problems. First, her allegation of a conspiracy, that "Defendants conspired at every hearing," is conclusory. FAC ¶ 94. Second, even assuming Nemcik could adequately allege a conspiracy under § 1985 "[t]o bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (internal quotation marks omitted); *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (recognizing that the Supreme Court has not defined what constitutes a "class" beyond race). Here, Nemcik has not alleged a race or class-based animus. To the extent Nemcik is alleging economic animus, the Supreme Court has ruled that § 1985 does not cover economic animus. *See United Broth. Of Carpenters and Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 837-39 (1983). Accordingly, the Court GRANTS with leave to amend Stevens' motion to dismiss Nemcik's § 1985 claim.

As to the *Rooker-Feldman* doctrine, under that doctrine, a federal district court has no authority to review the final determinations of a state court in judicial proceedings. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *Feldman*, 460 U.S. at 482 n.16). The *Rooker-Feldman* doctrine precludes not only

review of decisions of the state's highest court, but also those of its lower courts. *See Dubinka v. Judges of Superior Court*, 23 F.3d 218, 221 (9th Cir. 1994). A challenge under the *Rooker-Feldman* doctrine is a challenge for lack of subject matter jurisdiction. *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 937 (9th Cir. 1998).

The *Rooker-Feldman* doctrine applies when a plaintiff in federal court alleges a "de facto appeal" by (1) asserting errors by the state court as an injury, and (2) seeking relief from the state court judgment as a remedy. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139-40 (9th Cir. 2004). "A federal action constitutes such a de facto appeal where 'claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules.'" *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003)).

In this action, Nemcik alleges that the state court incorrectly calculated her child support and as such is seeking relief. FAC ¶ 61 ("Defendants in colluded and thereby denied Plaintiff due process for the purpose of creating permanent child support orders even though the custody orders were not final."); ¶ 64 ("Defendants have harmed Plaintiff by creating high amount of debt in the form of child support arrears…."); ¶ 97 ("Stacey Stevens would make hearsay statements to Edward Mills about Plaintiff's ability to provide income and Edward Mills would make orders based on her hearsay statements instead of the evidence and facts that Plaintiff presented."); at 27 (seeking the amount of child support arrears as relief). As such, in order for this Court to give Nemcik the relief she seeks, the Court would have to find that the state court child support orders were incorrect. The law does not allow a federal court to review the child support orders created by a state court. Accordingly, Nemcik's action, the basis of which is to re-calculate her child support orders, is barred by the *Rooker-Feldman* doctrine. Therefore, the Court GRANTS Stevens' motion to dismiss with leave to amend.

### C. Ku and Mills' Motion to Dismiss (ECF 50)

Ku and Mills argue that the *Rooker-Feldman* and *Younger* abstention doctrine preclude the court from ruling upon Nemcik's child support orders or interfering with pending state court

11

1  proceedings. Mot. 4-5, ECF 50. They also argue that Eleventh Amendment immunity bars
2  Nemcik's § 1983 and § 1985 claims. *Id*. at 5-6. As to Mills, they argue that judicial immunity
3  bars Nemcik's claims against him. *Id*. at 7. Moving to the specific causes of action, Ku and Mills
4  argue Title II of the ADA applies only to public entities and therefore Nemcik's third cause of
5  action against Mills and Ku in their individual capacity should be dismissed. *Id*. at 8-9. As to
6  Nemcik's fourth case of action, Ku and Mills argue that it is an ADA claim clothed as a § 1985
7  claim. *Id*. at 9. Moreover, they argue that Nemcik has not sufficiently alleged a conspiracy. *Id*.
8  As to Nemcik's fifth cause of action for injunctive relief, Ku and Mills argue that while it may be
9  an appropriate remedy for a viable claim under Title II, it is not a standalone claim. *Id*. at 10.
10 Finally, as to Nemcik's sixth cause of action for violation of the separation of powers, Ku and
11 Mills argue that it is precluded by judicial immunity. *Id*. at 10-11.

12 In opposition, Nemcik argues that Eleventh Amendment immunity does not apply because
13 one of her claims is based on the ADA. Opp. 1-2, ECF 63. She also argues that *Rooker-Feldman*
14 does not prevent prospective injunctive relief and that Ku and Mills should not be afforded
15 immunity because adjudicating her ADA accommodation request was an administrative, not
16 judicial function. *Id*. at 3-4.

17 The Court finds that the *Rooker-Feldman* doctrine bars any action requiring this Court to
18 examine whether the state court properly calculated Nemcik's child support orders. *See supra*
19 III.B.

20 Second, the Eleventh Amendment bars almost all suits against the California state court
21 system and its officers. *Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir.
22 2003). Here, the Eleventh Amendment prevents all of Nemcik's claims except those arising
23 under Title II of the ADA. As a result, Nemcik's § 1983 and § 1985 claims must be dismissed.
24 *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

25 Third, Nemcik's claims against Mills are barred by judicial immunity. "[J]udicial
26 immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireless v.*
27 *Waco*, 502 U.S. 9, 11 (1991). "Judicial immunity applies however erroneous the act may have
28 been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v.*

*Pope*, 793 F.2d 1072, 1075 (9th Cir.1986). "[A]bsolute judicial immunity does not apply to non judicial acts, i.e. the administrative, legislative, and executive functions that judges may on occasion be assigned to perform." *Forrester v. White*, 484 U.S. 219, 227 (1988).

Here, Nemcik argues that Mills was not performing in a judicial capacity because he improperly overtook the function of the ADA coordinator. However, several courts have held that ruling on an accommodation request is a judicial function protected by judicial immunity. *See, e.g.*, *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001); *Merritt v. McKenney*, Case No. 13-01391-JSW, 2013 WL 4552672, at *7-8 (N.D. Cal. Aug. 27, 2013). This Court agrees with these decisions.

Fourth, Title II only applies to "public entities." 42 U.S.C. §§ 12131(1)(A)-(B), 12132; *see also Frederick v. California Dept. of Corr. and Rehab.*, Case No. 08-cv-2222-MMC, 2008 WL 4415119, at *2 (N.D. Cal. Sept. 26, 2008) ("Plaintiff has named as defendants the CDCR and the individual prison employees who are denying him participation in the fire camp program. The CDCR is a 'public entity' under Title II of the ADA and therefore is a proper defendant to plaintiff's claim. Individuals, however, cannot be sued directly under the ADA.") (internal citations omitted). Accordingly, Nemcik's ADA claims are dismissed as to Ku and Mills without leave to amend; however, Nemcik is given leave to substitute in an appropriate defendant.

Fifth, Nemcik has not adequately pled her conspiracy causes of action. For example, she alleges "Mills and Ku working in tandem amounts to a conspiracy." FAC ¶ 86. Such an allegation is conclusory and lacks sufficient details regarding the alleged conspiracy.

Sixth, Nemcik's cause of action for injunctive relief is more appropriate as a remedy for an ADA violation rather than a stand-alone action. Accordingly, the Court GRANTS Ku and Mill's motion to dismiss Nemcik's fifth cause of action without leave to amend.

Accordingly, in summary, judicial immunity bars all causes of action against Mills, thus, the Court GRANTS the motion to dismiss all causes of action against Mills without leave to amend. The Court also GRANTS the motion to dismiss as to Ku without leave to amend since Title II only applies to "public entities." The Court gives Nemcik leave to amend to substitute in a proper defendant subject to specific rulings above.

### D. Barth's and DCSS's Motion to Dismiss (ECF 51)

Evalina Barth, an attorney with the Santa Clara County Department of Child Support Services ("DCSS") and DCSS argue that this Court does not have subject matter jurisdiction because of the *Rooker-Feldman* doctrine.[3] Mot. 6-8, ECF 51. To the extent this Court does have jurisdiction, Barth and DCSS argue that Nemcik's claims under § 1983 are barred against Barth because of prosecutorial immunity. *Id*. at 8. As to DCSS, they argue Nemcik has not alleged a deliberate policy, custom, or practice that was behind the constitutional violation that she suffered. *Id*. at 11-12.[4]

Nemcik responds that Eleventh Amendment immunity does not apply because she is asserting claims against Mills and Ku based on the ADA. Opp. 2, ECF 61. She also argues that Rooker-Feldman does not prohibit this suit because she is seeking prospective injunctive relief. *Id*. The remainder of Nemcik's opposition details how she believes Mills' action has caused her great harm. *Id*. at 4-7. However, Nemcik does concede that "[t]his matter stemmed from a family court custody litigation that has been ongoing for seven years." *Id*. at 8. She also argues that Barth had a duty to prevent Mills from calculating child support since that was not a judicial function. *Id*. at 9.

The Court agrees with Barth and DCSS and finds that the *Rooker-Feldman* doctrine bars this suit against them, Barth has absolute prosecutorial immunity, and Nemcik has not sufficiently alleged a policy, custom, or practice behind her alleged constitutional violation against DCSS. First, as explained *supra* III.B, this action stems from Nemcik's belief that her child support was incorrectly calculated. This Court cannot examine her child support order, because *Rooker-Feldman* does not allow federal courts to review state court child supports orders.

Second, Barth is a DCSS attorney and Nemcik alleges her conduct in prosecuting and enforcing child support was unlawful. However, these actions relate directly to her work as a DCSS attorney. *See, e.g.*, *Dorsey v. Orloff*, Case No. 96-cv-3587-FMS, 1997 WL 85016, at *3

---

[3] At the hearing, Barth and DCSS waived their improper service argument and agreed to accept service as performed by the United States Marshals.
[4] Barth and DCSS incorrectly identify the state court proceedings as a "Dependency Proceeding." Mot. 2, ECF 51. It is, in fact, a family law child support proceeding.

14

(N.D. Cal. Feb. 24, 1997) aff'd 131 F.3d 146 (9th Cir. 1997). Nemcik did not oppose Barth's prosecutorial immunity argument in her opposition brief.

Third, Nemcik has not sufficiently alleged a policy, custom, or practice behind these constitutional violations against DCSS. A plaintiff seeking to establish municipal liability must demonstrate that the government "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Galen v. Cnty of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658, 694-85 (1978)). To meet this requirement, the plaintiff must show both causation-in-fact and proximate causation. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Here, Nemcik has not alleged or identified any specific policy that caused her harm.

Thus, because Nemcik's claims against Barth are barred by prosecutorial immunity, Nemcik has not offered any argument in response, and the Court sees no way she could amend her claims to assert a viable cause of action against Barth, the Court GRANTS the motion to dismiss without leave to amend as to the claims against Barth. As to DCSS, Nemcik has not provided the Court with any indication that this action does not arise out of child support proceedings in state court and is thus, barred by *Rooker-Feldman*. Thus, allowing Nemcik leave to amend would be futile, and the Court GRANTS the motion to dismiss as to DCSS without leave to amend.

E. **Henley's Motion to Dismiss (ECF 59)**

Henley argues that the domestic-relations exception and the *Rooker-Feldman* doctrine bars Nemcik's claims. Mot. 5-9, ECF 59. She also argues that the Eleventh Amendment bars any suit against her in her official capacity. *Id*. at 9. Henley claims that Nemcik's § 1983 claim fails because Henley is not a person under that statute. *Id*. at 9-10. Henley also argues that Nemcik has not shown she has a due process right to have the Commission on Judicial Performance review her complaints. *Id*. at 11. Moreover, Henley notes that Nemcik attached as an exhibit to her FAC a letter explicitly stating the CJP reviewed her complaint but decided not to take further action. *Id*. Finally, Henley argues that Nemcik has not alleged her claims with specificity. *Id*. at 11-12.

Nemcik argues the domestic-relations exception and *Rooker-Feldman* do not apply because the CJP has a duty to investigate judges regardless of the type of case involved. Opp. 2-3,

ECF 70. Nemcik argues that Henley is not protected by Eleventh Amendment immunity from suits in her individual capacity. *Id*. at 3. Nemcik argues that she has adequately alleged a claim against Henley. *Id*. at 4-6.

Although Henley has asserted the domestic-relations exception and *Rooker-Feldman*, relief against Henley is not a collateral attack on the state court proceeding, but rather a due process claim based on alleged conduct by Henley's refusal to investigate Nemcik's complaint. Both sides agree that the Eleventh Amendment prohibits to this suit against Henley in her official capacity and to the extent Nemcik is alleging a claim against Henley in her official capacity, the Court dismisses it without leave to amend. As to the remaining arguments, Nemcik's allegations are too vague for the Court to adequately assess them. For example, she conclusory alleges through information and belief that Henley colluded with Mills to cover up her complaint. However, at the same time, Exhibit O to her FAC indicates that the CJP considered her complaint that Nemcik claims was covered up. Accordingly, the Court GRANTS Henley's motion to dismiss with leave to amend as to claims asserted against her in her individual capacity.

### F.   Nemcik's Motion to Stay (ECF 75)

Nemcik seeks a stay of state court proceedings so that a proper child support amount can be calculated.[5] Mot. 1, ECF 75. She specifically requests that the federal district court require child support to be determined by a judge. *Id*. at 3; *see also* 4-5 (discussing her child support payments). She is also seeking a trial "to be able to have qualified professionals [ensure] that the proper calculations are performed." *Id*. at 5.

DCSS, Barth, ECF 77, Ku, and Mills, ECF 78 filed oppositions to Nemcik's motion to stay. DCSS and Barth argue that Nemcik's motion for a stay is barred by the *Rooker-Feldman* doctrine. DCSS Opp. 2, ECF 77. Mills and Ku argue that the Anti-Injunction Act prohibits an injunction of state court proceedings except very limited circumstances not present here. Mills Opp. 2, ECF 78.

---

[5] Based on the briefing, it was not clear to the Court whether Nemcik sought to stay this proceeding or her state court proceedings. At the hearing, Nemcik clarified that she is seeking a stay of the state court proceedings.

In reply, Nemcik argues that she needs a stay because her child support orders are unjust and she is being held on contempt charges for not paying her child support. Reply 1-2, ECF 81. She claims that a stay should take place while a jury trial consisting of her peers decide what should happen going forward with respect to her child support. *Id*. at 4.  She also argues a stay should happen until custody can be fully litigated. *Id*. at 5. She also states that *Rooker-Feldman* does not prohibit prospective injunctive relief. *Id*. at 4.  Nemcik does not address the arguments about the Anti-Injunction Act.

As this Court explained previously, any attempt to fix her child support orders would be barred by *Rooker-Feldman*. *See supra* III.B.  The law does not allow a federal court to review child support orders of a state court. Second, the Anti-Injunction Act, 28 U.S.C. § 2283, establishes "the general rule that courts of the United States shall not enjoin proceedings in state courts." *Merle Norman Cosmetics, Inc. v. Victa*, 936 F.2d 466, 468 (9th Cir. 1991). The Act establishes three specific exceptions to the general rule: A federal court may enjoin state proceedings "only 'as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.' " *Id*. These exceptions to the Anti-Injunction Act must be construed narrowly. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Here, Nemcik has not argued, nor does the Court find, that any of the exceptions to the Anti-Injunction Act apply. As a result, the Anti-Injunction Act prohibits this Court from staying any state court proceedings. Accordingly, Nemcik's motion to stay is denied.

      **G.**    **Nemcik's Motion for a Temporary Restraining Order (ECF 84)**

Nemcik seeks a temporary restraining order and injunction to prevent the state court from jailing her for being in contempt of child support orders. Mot. for TRO, ECF 84.

The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Alternatively, an injunction can issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

Here, Nemcik's failure to establish a likelihood of success on the merits is dispositive to her motion. As explained throughout this order, Nemcik's causes of actions are barred by the *Rooker-Feldman* doctrine, prosecutorial immunity, the Anti-Injunction Act, or are inadequately pled. Even the relief sought by this motion for a temporary restraining order and injunction would be prevented by the Anti-Injunction Act as this Court cannot force a state court to stop its proceedings. Since the Court does not find Nemcik has shown any likelihood of success on the merits, the Court does not address the remaining *Winter* factors. *See, e.g.*, *Tate v. Nevada Bd. of Med. Exam'rs*, Case No. 11-cv-1613-JCM , 2011 WL 5101987,at *1 (D. Nev. Oct. 26, 2011).[6] Accordingly, the Court DENIES Nemcik's motion for a temporary restraining order and injunction.

### H. Leave to Amend

The Court will give Nemcik leave to amend in accordance with the rulings above and the following directive. In considering whether to amend, the Court notes that it appears from all of

---

[6] At the hearing, Nemcik informed the Court of a March 14, 2016 Department of Justice letter. She subsequently filed this letter with the Court. This letter provides guidance to state and local courts regarding best practices for enforcement of fines and fees. *Id*. at 1. The letter explains that "state and local courts must inquire as to a person's ability to pay prior to imposing incarceration for nonpayment." *Id*. at 3. While the Court has read this letter and appreciates Nemcik bringing this letter to the Court's attention, this letter does not change the fact that *Rooker-Feldman* and the Anti-Injunction Act prevent this Court from interfering with state court proceedings.

18

the filings in this case (the complaint, FAC, motions, and oppositions) that Nemcik's main interest in pursuing this case is to obtain relief to rectify incorrect child support orders. To the extent Nemcik's claims are predicated or involve seeking a recalculation of her child support orders, either explicitly or implicitly, this Court is unable to address that issue because of the *Rooker-Feldman* doctrine. As a result, Nemcik is advised to consider the *Rooker-Feldman* doctrine if she chooses to amend her FAC. Although the Court is giving Nemcik leave to amend, Nemcik may not add new causes of actions or parties without leave of Court. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) ("Unless it is absolutely clear that no amendment can cure the defect, however, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Stevens' motion to strike is GRANTED with leave to amend.
2. Stevens' motion to dismiss is GRANTED with leave to amend.
3. Ku and Mills' motion to dismiss is GRANTED without leave to amend. The Court GRANTS Nemcik leave to substitute in a proper defendant in regard to her ADA claim and to properly allege facts to support the claim.
4. Barth and DCSS's motion to dismiss is GRANTED without leave to amend.
5. Henley's motion to dismiss is GRANTED with partial leave to amend.
6. Nemcik's motion to stay is DENIED.
7. Nemcik's motion for a temporary restraining order and injunction is DENIED.

Any amended complaint is due **on or before September 16, 2016.** No new causes of action or parties may be added without leave of Court. Failure to meet the September 16, 2016 deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of all of Nemcik's claims in this action.

Nemcik may wish to contact the Federal Pro Se Program, a free program that offers limited legal services and advice to parties who are representing themselves. The Federal Pro Se Program has offices in two locations, listed below. Help is provided by appointment and on a drop-in basis.

Parties may make appointments by calling the program's staff attorney, Mr. Kevin Knestrick, at 408-297-1480. Additional information regarding the Federal Pro Se Program is available at http://cand.uscourts.gov/helpcentersj.

| | |
|---|---|
| Federal Pro Se Program | Federal Pro Se Program |
| United States Courthouse | The Law Foundation of Silicon Valley |
| 280 South 1st Street | 152 North 3rd Street |
| 2nd Floor, Room 2070 | 3rd Floor |
| San Jose, CA 95113 | San Jose, CA 95112 |
| Monday to Thursday 1:00 pm – 4:00 pm | Monday to Thursday 9:00 am – 12:00 pm |
| Fridays by appointment only | Fridays by appointment only |

**IT IS SO ORDERED.**

Dated: August 16, 2016

_____
BETH LABSON FREEMAN
United States District Judge