1
2
3    **UNITED STATES DISTRICT COURT**
4    **NORTHERN DISTRICT OF CALIFORNIA**
5    **SAN JOSE DIVISION**
6
7    TANYA NEMCIK,                      Case No.  16-cv-00322-BLF
8                    Plaintiff,
9          v.                           **ORDER GRANTING MOTIONS TO
                                        DISMISS AND MOTION TO STRIKE;
10   STACEY STEVENS, et al.,            AND DENYING MOTION FOR LEAVE
                                        TO AMEND**
11                   Defendants.
12
13         This action arises out of child custody proceedings in the California state courts.  Plaintiff
14   Tanya Nemcik ("Nemcik") alleges that based on an erroneous child support order against her in
15   family law proceedings in Santa Clara County Superior Court she faces a mountain of debt she
16   cannot possibly pay.  She further alleges that she has been charged with contempt of that child
17   support order and believes that she will be incarcerated as a form of retaliation by Defendants.  *See*
18   Second Am. Compl. ("SAC") ¶ 16, 34, ECF 100.
19         In this lawsuit, Nemcik brings several causes of actions grounded in the state court's
20   allegedly improper calculation of her child support, conspiracy among lawyers and family law
21   judges in Contra Costa and Santa Clara counties to deprive Nemcik of her constitutional rights,
22   and failure by the California Commission on Judicial Performance to discipline the identified
23   judges.  In this Order, the Court addresses the following motions: (1) Defendant Stacey Stevens'
24   ("Stevens") anti-SLAPP motion to strike the tenth, thirteenth, and fourteenth causes of action,
25   ECF 103; (2) Stevens' motion to dismiss, ECF 105; (3) Defendant Commission on Judicial
26   Performance's motion to dismiss, ECF 111; (4) Defendant Team Legal's motion to dismiss, ECF
27   114; and (5) Nemcik's motion for leave to amend the complaint, ECF 127.
28         For the reasons stated herein, the Court rules as follows: (1) GRANTS Stevens' motion to

strike; (2) GRANTS Stevens' motion to dismiss; (3) GRANTS Commission on Judicial Performance's motion to dismiss; (4) GRANTS Team Legal's motion to dismiss; and (5) DENIES Nemcik's motion for leave to file a third amended complaint. Pursuant to Civ. L.R. 7-1(b), the Court finds Team Legal's motion to dismiss suitable for submission without oral argument and hereby VACATES the hearing scheduled for August 24, 2017.

## I.    BACKGROUND

The instant motions to dismiss are evaluated based solely on the Second Amended Complaint ("SAC"), the operative complaint in this case. ECF 100.

### A.    Allegations against the Commission on Judicial Performance and Stevens

The SAC states that Nemcik brings this action to assert, vindicate, and secure the benefit and enjoyment of constitutional rights against those who commit crimes. SAC ¶ 10, at 3. [1] Nemcik alleges she has been harmed in Contra Costa and Santa Clara County. *Id.* ¶ 11, at 3. As a result, Nemcik seeks monetary damages and equitable relief for occurrences in her ongoing family law case. *Id.*

On March 16, 2010, Nemcik filed a complaint with the CJP against Contra Costa Superior Court Judge Fenstermacher alleging bias and unlawful acts. *Id.* ¶ 11, at 3-4. Nemcik filed a second complaint with the CJP on March 22, 2010. *Id.* ¶ 24. On July 7, 2010, the CJP responded to her complaint in a letter stating that it would not take action. *Id.* ¶ 25. Nemcik states that on June 25, 2013, the Court of Appeal determined that Judge Fenstermacher abused her discretion and denied Nemcik of her constitutional rights of due process. *Id.* ¶ 11, at 3-4. Further, Nemcik states that Judge Fenstermacher created unlawful orders that gave Brian Krippendorf, the father of her children, custody. *Id.* ¶¶ 6, 12, at 6-7. Nemcik alleges that her rights under the Fifth, Sixth, Seventh, Eighth, Ninth, and Thirteenth Amendments have been violated because of the CJP's failure to perform its duty. *Id.* ¶ 31.

On June 21, 2012, Nemcik's child support case was moved from Contra Costa County to Santa Clara County. *Id.* ¶ 17, at 8. Nemcik claims that she was never informed of this and had no

---

[1] The Court observes that the SAC identifies ¶¶ 1-22 at pages 1-6 and starting at page 6, successive paragraphs are numbered ¶¶ 5-143.

1    opportunity to object to jurisdiction. *Id.* As a result, Nemcik alleges that the trial date was moved

2    without giving her time to serve key witnesses. *Id.* ¶ 66. Nemcik claims that Stevens conspired

3    with the commissioners, clerks, and others to change the child support venue to Santa Clara

4    County. *Id.* ¶ 30.

5        From 2013 to 2016, Nemcik alleges that Stevens and Contra Costa Judge Fannin

6    conspired regarding various matters including: attaining a domestic violence restraining order

7    against Nemcik, calculating erroneous child support payments, and denying Nemcik her due

8    process rights to a fair trial. *Id.* ¶¶ 14, 16, 66, at 8, 16. Nemcik claims that attorneys and judges

9    routinely conspire together to steal children for their personal financial gain. *Id.* ¶ 9, at 7.

10   Specifically, Nemcik alleges that Stevens conspired with Santa Clara Commissioner Mills to set

11   child support at an amount higher than she was able to pay, causing her cruel and unusual

12   punishment. *Id.* ¶ 20, at 9. Further, Nemcik alleges that Stevens conspired, again, with

13   Commissioner Mills to gain his approval to harass Nemcik and her employer. *Id.* ¶ 128. Nemcik

14   believes that Stevens intentionally interfered with an economic relationship between her and her

15   employer due to the constant litigation, requests for sanctions, and attorneys' fees thereby

16   interfering with her ability to do work. *Id.* ¶¶ 126-27.

17       In 2015, Contra Costa Superior Court Judge Landau became the judge for Nemcik's state

18   court case. *Id.* ¶ 40. Nemcik alleges that Judge Landau conspired with Stevens to issue an order

19   deeming Nemcik a vexatious litigant and to deny her request for trial. *Id.* ¶ 40. Nemcik blames

20   the CJP for having failed to do its duty to properly discipline the judges. *Id.* ¶ 42. According to

21   Nemcik, if the judges had been properly trained, they would not have allowed Stevens to

22   "continue her malicious rampage against [Nemcik]." *Id.* Nemcik claims that the CJP knew its

23   conduct created a substantial risk of harm, but failed to take adequate action to prevent it. *Id.* ¶¶

24   45-6. As a result, Nemcik states that the CJP committed crimes that caused her to lose her house,

25   money, property, and time with her children. *Id.* ¶ 55. Additionally, Nemcik states that these

26   crimes have caused her great emotional trauma. *Id.*

27       Nemcik believes that she has been denied due process and an impartial judge. *Id.* ¶ 72.

28   Specifically, Nemcik states that Contra Costa Judge Fenstermacher, Judge Fannin, and Judge

1  Landau concealed documents with the intent of denying her constitutional rights. *Id.* ¶ 74.

2       Additionally, Nemcik alleges that she was discriminated against based on her disability,

3  recognized by the Americans with Disabilities Act ("ADA"). *Id.* ¶ 36. Nemcik states that she

4  requested accommodations[2] and was provided them under the ADA; however, Nemcik also

5  alleges that she was discriminated against because Santa Clara Commissioner Mills denied certain

6  accommodations including: a tape recorder, extra time to listen and understand court hearings, and

7  "plain English orders." *Id.* ¶¶ 93, 98. Once again, Nemcik alleges that the CJP had an obligation

8  to train and supervise its employees, but failed to do so, resulting in ADA violations. *Id.* ¶ 101.

9       **B.     Allegations against Team Legal and Thompson Reuters**

10      In addition to Defendants CJP and Stevens, Nemcik has asserted claims against Team

11  Legal and Thompson Reuters. *Id.* ¶ 122, and p. 28.

12      Defendant Team Legal is a company that provides legal services including service of

13  process. *See* SAC ¶¶ 106-07. Nemcik alleges that Team Legal acted in concert with the judges

14  and judicial officers to notify her of a change in venue for her child custody case. *Id.* ¶¶ 108-09.

15  Nemcik avers that Team Legal failed to properly train and supervise its employee, Rick Secrist,

16  and knew that he claimed proper service even though Nemcik claims she was never served. *Id.* ¶¶

17  107, 121-2. Nemcik further alleges that the court either reasonably relied on the representation of

18  Team Legal or that they conspired together to purposely harm her. *Id.* ¶ 124.

19      Defendant, Thompson Reuters, is a company that owns software made to calculate child

20  support. *See* SAC at 28. Nemcik seeks monetary damages for the amount of child support

21  calculated through its software program and instructions. *Id.*

22      **C.     Allegations against all Defendants**

23      Nemcik alleges that all Defendants intentionally acted in ways to cause her emotional

24  stress by yelling at her and making unreasonable orders, requests, and false statements. *Id.* ¶ 135.

25  Nemcik also alleges that the Defendants acted with reckless disregard as to the probability that she

26  would suffer emotional distress. *Id.* ¶ 136. Nemcik specifically claims that the CJP was negligent

27

28  _____
[2] Out of respect for Nemcik's privacy, the Court does not describe in detail the basis for Nemcik's request for accommodations under the ADA.

4

in its obligations and has been a substantial factor in causing her serious emotional distress. *Id.* ¶ 140.

As a result, Nemcik brings this suit against the following entities and individuals: (1) against the CJP, for malice, oppressive, and fraudulent conduct of the CJP, judges, commissioners, and Stevens; (2) against Stevens, for malice and fraudulent conduct; (3) against Team Legal, for fraudulent conduct and conspiring for the purpose of causing her harm; and (4) against Thompson Reuters, for allowing judges to use its software program and instructions. SAC at 28.

## II.   LEGAL STANDARD

### D.   Anti-SLAPP

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks and citations omitted). Section 425.16 of the California Code of Civil Procedure, also referred to as the anti-SLAPP statute, provides in relevant part that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. P. Code § 425.16(b)(1).

Resolution of an anti-SLAPP motion is a two-step process. *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016). "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." *Id.* (citing *Taus v. Lofton*, 40 Cal. 4th 683, 712 (2007)). Second, "[i]f the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." *Id.* Under the second step, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." *Makaeff*, 715 F.3d at 261 (internal quotation marks and citation omitted).

### E. Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient to state a claim, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

The Court addresses each of the pending motions below.

### A. Stevens' Motion to Strike (ECF 103)

Stacey Stevens was an attorney representing Brian Krippendorf in Nemcik's state court child custody and support case. Mem. in support of Mot. to Strike ("MTS") 1, 4, ECF 104. She moves to strike Nemcik's eighth cause of action for intentional interference with prospective economic advantage, and ninth cause of action for intentional infliction of emotional distress pursuant to California's anti-SLAPP statute. *Id.* at 1. According to Stevens, Nemcik's SAC has not cured the deficiencies of her FAC, and the allegations still relate to Stevens' litigation related activity, which should be stricken under the anti-SLAPP statute. *Id.* at 4-5.

Nemcik opposes the motion, arguing that Stevens is liable for these claims despite being a private actor, as she conspired with the state court judges who are state actors. Opp'n to MTS 2, ECF 109. Nemcik further argues that Stevens' conduct went beyond the scope of petitioning the

6

court. *Id*. at 3. Nemcik explains that she recently received documents from a subpoena that were used to "determine custody in closed sessions hearings." *Id*. According to Nemcik, she had no opportunity to engage to those hearings. *Id*. Nemcik argues that this is evidence of Stevens' conspiracy to deny her due process. *Id*.

California's anti-SLAPP statute applies to litigation related conduct, provided those statements are made in connection with pending or anticipated litigation. *See, e.g.*, *Semiconductor Equip. and Materials Int'l, Inc. v. The Peer Grp., Inc.*, No. 15-00866-YGR, 2015 WL 5535806. Here, Nemcik's eighth and ninth causes of action relate to Stevens' litigation-connected conduct. In support of the eighth cause of action, the SAC states that Stevens intentionally interfered with Nemcik's economic relationships with employers due to constant litigation and requests for sanctions and attorney's fees. *See, e.g.*, SAC ¶¶ 126-27. According to the SAC, such conduct by Stevens interfered with Nemcik's ability to do the work she contracted with her employer. *Id*. As to the ninth cause of action, the SAC alleges that Stevens' "shocking" behavior caused Nemcik severe emotional distress. *E.g.*, *id.* ¶¶ 133-135. Specifically, Stevens and other defendants "yell[ed]" at Nemcik and made "unreasonable orders and requests." *Id*. Nemcik also references Exhibits A and E in support of these two causes of action. Exhibit A is a copy of a Contra Costa Superior Court docket for Nemcik's child support and custody case against Brian Krippendorf. Ex. A to SAC, ECF 100-1. Exhibit E contains third-party statements noting that Stevens had "yelled" at Nemcik and made "abrasive" and "snide" comments about Nemcik. Ex. E to SAC, ECF 100-3. Even though these alleged behaviors might not be pleasant to encounter, they remain activities in connection with the litigation in Nemcik's child support case. As such, Stevens has met her burden of establishing that the challenged claims arose from activity protected by California Civil Procedure Code § 425.16.

As to the allegations that the closed session hearings were improper and suggestive of a conspiracy, such allegations do not negate that Stevens' conduct was within the scope of the litigation proceeding. Nemcik admitted at the hearing that during the relevant times, she was represented by an attorney who was present at the "closed hearings." *See also* Ex. O-220, ECF 100-5. Given that an attorney representing Nemcik was present, the mere occurrence of hearings

7

off the record does not support her conspiracy claims that Stevens' conduct was improper and beyond the scope of litigation. Accordingly, this alleged conduct is also related to Stevens' litigation activity on behalf of her client in the context of judicial proceedings and is protected conduct. Thus, Stevens has satisfied the first prong of the anti-SLAPP motion.

The burden shifts to Nemcik to demonstrate the merit of her claim by establishing a probability of success – "a summary-judgment-like procedure." *Baral*, 1 Cal. 5th at 384. With regard to the eighth cause of action, elements for a claim for intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (citation and internal quotations omitted). Moreover, the California Supreme Court in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* held that a plaintiff seeking to recover damages for interference with prospective economic advantage must plead and prove as part of its case-in-chief that the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself." 11 Cal. 4th 376, 393 (1995). Here, the exhibits in combination with the complaint fail to support that Stevens' actions and statements underlying the family court litigation are wrongful. Further, California Civil Code § 47(b) provides privileges for statements made in judicial proceedings. *See GeneThera, Inc. v. Troy & Gould Prof'l Corp.*, 171 Cal. App. 4th 901, 909 (2009). California Civil Code § 47(b) broadly applies to "any communication and all torts other than malicious prosecution." *Id.* Accordingly, Nemcik has not demonstrated likelihood of success on this claim based on Stevens' litigation conduct.

Turning to the ninth cause of action for intentional infliction of emotional distress, the required elements are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal.

8

3d 868, 903 (1991) (internal quotation marks and citation omitted). The alleged conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks and citation omitted). Again, like the eighth cause of action discussed above, California Civil Code § 47(b) provides absolute privilege for Stevens' conduct that forms the basis for Nemcik's claims. *See GeneThera*, 171 Cal. App. 4th at 909. Thus, Nemcik has not demonstrated any likelihood of success on either the eighth or ninth causes of action, and thus she has not met her burden under the second prong.

### B.     Stevens' Motion to Dismiss (ECF 105)

Stevens moves to dismiss Nemcik's second cause of action under § 1983 for two reasons. First, Stevens argues that her action was that of an attorney working on behalf of a client in a legal proceeding and does not constitute "acting under the color of state law" for the purposes of § 1983. Mem. in support of Mot. to Dismiss ("MTD") 3, ECF 106. Second, Stevens contends that to the extent Nemcik attempts to allege that Stevens conspired with a state actor, Nemcik has only conclusorily alleged that conspiracy. *Id.* at 3-4. Lastly, Stevens also argues that the *Rooker-Feldman* doctrine prohibits this Court from adjudicating this suit. In opposition, Nemcik argues that private persons who conspire with state actors are acting under the color of law for purposes of § 1983. Opp'n to MTD 2-3, ECF 109. Nemcik does not substantively address Stevens' arguments regarding § 1983 and the *Rooker-Feldman* doctrine, but generally argues that the cited cases do not apply to her. *Id.* at 4-5.

To state a claim under §1983, a plaintiff must allege that the defendant was acting under color of state law at the time the acts complained of were committed, that the acts complained of resulted in the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States, and that the plaintiff was damaged as a result. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005). Private persons may act under color of state law if they "willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989). When determining whether a private party acted under color of law, the courts must "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence*

9

*St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.1999).

As discussed above in connection with Stevens' motion to strike, the SAC and the referenced exhibits are devoid of any facts supporting the existence of an agreement or any "joint action" between Stevens and a judge or any other state actor, and how that agreement violated her constitutional rights. *See Copple v. Astrella & Rice, P.C.*, 442 F. Supp. 2d 829, 837 (N.D. Cal. 2006) (finding conclusory allegations of conspiracy between an attorney and a judge insufficient to support a § 1983 claim).

Stevens also seeks to dismiss Nemcik's third cause of action under 42 U.S.C. § 12203 because Nemcik has not alleged a retaliation claim, and the alleged violation of the Americans with Disabilities Act ("ADA") cannot be asserted against Stevens in her individual capacity. MTD 4. Under the ADA, a plaintiff can only state a claim under subsections 12203(a) and (b) against "persons" in the contexts of employment, public services or public accommodation, and the ADA provides no remedy outside of those contexts against individuals. *Rein v. Ainer*, No. 14-01698-JD, 2014 WL 5828797, at *4 (N.D. Cal. Nov. 10, 2014) (citing *Cai v. Chiron Corp.*, No. 04-1587-CRB, 2004 WL 1837985, at *4 (N.D. Cal. Aug. 17, 2004) and *Stern v. Cal. State Archives*, 982 F. Supp. 690, 693 (E.D. Cal. 1997)). This ADA claim fails because Stevens was not Nemcik's employer and played no role in providing her public services or public accommodation. Accordingly, this ADA claim cannot be asserted against Stevens.

With regard to Nemcik's fifth cause of action asserted under 42 U.S.C. § 1985, conspiracy to interfere with civil rights, the SAC also lacks plausible allegations, similar to the deficiencies suffered by her second cause of action under § 1983. 42 U.S.C. § 1985 contains three clauses specifying types of prohibited conduct, none of which is alleged here. First, there is no allegation that Stevens conspired "by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof" as required by 42 U.S.C. § 1985(1). Second, there is no allegation that Stevens conspired "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein." 42 U.S.C. § 1985(2). Likewise, with respect to the second subclause of §1985(2), prohibiting conspiracy "with intent to

deny to any citizen the equal protection of the laws," Nemcik has not alleged that Stevens denied her access to state courts because Nemcik was a member of a protected class. *See Portman v. Cty. of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993). As to the last clause, § 1985(3) protects against racial animus and extends protection to non-racial groups only if "the courts have designated the class in question a suspect or quasi-suspect classification." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (noting that "economic motivations should be deemed beyond the reach of § 1985(3)") (citations omitted). Again, the complaint contains no allegations that Nemcik suffered from racial animus or that she falls into a suspect or quasi-suspect classification.

Finally, turning to Stevens' argument based on the *Rooker-Feldman* doctrine, the Court agrees with Stevens and finds that it has no authority to review the instant action. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *Feldman*, 460 U.S. at 482 n.16). The *Rooker-Feldman* doctrine precludes not only review of decisions of the state's highest court, but also those of its lower courts. *See Dubinka v. Judges of Superior Court*, 23 F.3d 218, 221 (9th Cir. 1994). A challenge under the *Rooker-Feldman* doctrine is a challenge for lack of subject matter jurisdiction. *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 937 (9th Cir. 1998).

The *Rooker-Feldman* doctrine applies when a plaintiff in federal court alleges a "de facto appeal" by (1) asserting errors by the state court as an injury, and (2) seeking relief from the state court judgment as a remedy. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139-40 (9th Cir. 2004). "A federal action constitutes such a de facto appeal where 'claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules.'" *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003)).

The Court has previously determined based on Nemcik's first amended complaint that the *Rooker-Feldman* doctrine bars this action. Here, the SAC is no different. The SAC still seeks to present the final determination of a state court child support and child custody proceeding for this Court to review. Specifically, Nemcik alleges that the state court wrongfully took away unsupervised time with her children and issued unlawful child support and restraining orders. *E.g.*, SAC ¶ 11 ("This case also seeks monetary damages and equitable relief for an ongoing family law case that includes Department of Child Support Services."); *id.* ¶¶ 27, 30 ("Contra Costa Superior Court "Judge Fannin further damaged Plaintiff by taking away all of her unsupervised time with her children," and setting "unlawful child support orders"); *id.* ¶ 40 (Contra Costa Superior Court Judge Landau "also unlawfully conspired with STEVENS to order Plaintiff a vexatious litigant"); *id.* ¶ 71 ("Further damages of STEVENS have imposed on Plaintiff in the form of Domestic Violence Restraining Order"). As such, in order for this Court to give Nemcik the relief she seeks, the Court would have to find that the state court orders were incorrect. The law does not allow a federal court to review theses state court orders referenced in the complaint. Accordingly, Nemcik's action, the basis of which is to re-calculate her child support orders, or to receive unsupervised time with her children, is barred by the *Rooker-Feldman* doctrine.

## C. The Commission on Judicial Performance's Motion to Dismiss (ECF 111)

The Commission on Judicial Performance ("CJP") moves to dismiss the asserted claims on several grounds. First, it argues that Eleventh Amendment immunity bars Nemcik's claims. CJP Mot. 5-6, ECF 111. Second, it contends that states and arms of a state are not considered "persons" for purposes of §1983, and thus are not subject to suit under §1983. *Id.* at 6-7 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989)). Third, it argues that the domestic relations exception to federal court jurisdiction prevents federal district courts from adjudicating domestic relations claims. CJP Mot. 7-8 (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). Lastly, it asserts that the *Rooker-Feldman* doctrine, the Younger abstention doctrine, Nemcik's failure to comply with the California Government Claims Act, and the statute of limitations are additional grounds for which the claims should be dismissed. CJP Mot. 8-13.

1    In opposition, Nemcik acknowledges that "the Commission on Judicial Performance is a
2    government agency and that [] one cannot recover monetary damages from a government agency."
3    Opp'n to CJP Mot. 3, ECF 116; *id.* at 2 (stating that "Plaintiff recently learned that a state agency
4    cannot be a defendant in my complaint and that the Commission on Judicial Performance is a state
5    agency").

6         In light of Nemcik's admission that the CJP cannot be sued in her complaint, the Court
7    grants the CJP's motion to dismiss.  The asserted claims also must be dismissed on two additional
8    alternative grounds raised by the CJP.  First, the Eleventh Amendment bars this suit against the
9    CJP.  *See Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003)
10   (considering court employees as "arms of the State"); *Ricotta v. State of Cal.*, 4 F. Supp. 2d 961,
11   976 (S.D. Cal. 1998) (finding that the Eleventh Amendment barred the suit against the
12   Commission on Judicial Performance based on facts and circumstances arising from a marriage
13   dissolution proceeding in state court).  Second, the *Rooker-Feldman* doctrine bars the claims
14   against the CJP.  As discussed above for claims asserted against Stevens, the case requires this
15   Court to examine whether the state court properly calculated Nemcik's child support and properly
16   issued those orders in family court.  *See supra* III.B.  Given that the claims against the CJP cannot
17   proceed for these reasons, the Court does not address the other grounds raised by the CJP in
18   support of its motion to dismiss.

19   **D.    Team Legal**

20        **i.    Team Legal's Request for Judicial Notice**

21        Prior to turning to Team Legal's motion to dismiss, the Court first addresses Team Legal's
22   Request for Judicial Notice ("RJN").  Team Legal has requested judicial notice of three
23   documents, attached to the request as Exhibits 1 through 3:  (1) Nemcik's first amended
24   complaint; (2) Court's Omnibus Order Regarding Pending Motions by Defendants to Dismiss or
25   Strike the FAC and by Plaintiff for a Stay and Temporary Restraining Order and Preliminary
26   Injunction dated August 16, 2016; and (3) Nemcik's SAC.  RJN, ECF 114-2.  Judicial notice is
27   appropriate with respect to these exhibits for the purpose of the motion to dismiss because they are
28   documents publicly filed in this Court.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649

(9th Cir. 1988) (court may take judicial notice of matters of public record).  Nemcik does not object to the request.  Accordingly, the Court GRANTS Team Legal's request for judicial notice.

### ii.    Team Legal's Motion to Dismiss (ECF 114)

Team Legal moves to dismiss the claims asserted against it, including the second and fifth claims under 42 U.S.C. § 1983(5).  According to Team Legal, it was Mr. Secrist's service of process upon Nemcik in the state court custody dispute that forms the basis for her claims against Team Legal here.  Team Legal Mot. 2, ECF 114-1.  Team Legal contends that such basis, as well as Nemcik's conclusory allegation regarding any alleged conspiracy, fails to meet the pleading standard.  *Id.* at 6.  Team Legal further argues that Nemcik did not obtain leave from the Court to add Team Legal as a defendant to her SAC, so the addition of Team Legal violates this Court's order granting a limited scope of permissible amendment.  *Id.* at 3-4.

In opposition, Nemcik avers that "Team Legal hired and trained and supervised process server, Rick Secrist, of which he was named as a defendant in the First Amended Complaint." Opp'n 2, ECF 121.  Nemcik does not address the merits of other arguments made by Team Legal other than that the defendants named in the SAC have caused her harm.  *Id.*

In ruling on Team Legal's motion, the Court has disregarded all of its factual allegations that are outside the SAC.  However, a review of the SAC leads the Court to conclude that the § 1983 claims against Team Legal fail to meet the Rule 12(b)(6) pleading standard.  The SAC does not state any plausible facts supporting how Team Legal conspired with a state actor or how the alleged conspiracy violated any of Nemcik's civil rights.  For example, the SAC merely states in conclusory terms that "Team Legal acted in concert with judges and judicial officers and other government agencies and knew that employee Rick Secrist wrote claiming service even though it had not been served" and that Team Legal "failed to train and properly supervise their employees."  SAC ¶¶ 107-08.  SAC also states that Rick Secrist "did not serve the documents" on Nemcik.  *Id.* ¶ 121.  However, the statements in connection with the alleged conspiracy are conclusory and fail to show how Team Legal conspired with a state actor.  *See supra* III.B.; *Copple*, 442 F. Supp. 2d at 837 (finding conclusory allegations of conspiracy cannot support a § 1983 claim).

14

As to Nemcik's remaining state law claims against all Defendants named in the SAC, the Court does not address them under Rule 12(b)(6). Because Nemcik has not sufficiently alleged a federal cause of action, and without a viable federal cause of action, the Court declines to exercise supplemental jurisdiction over Nemcik's state law claims.

### E. Thompson Reuters

As to Defendant Thompson Reuters, the Court finds no causes of action asserted in the SAC against it. *See* SAC ¶¶ 22-143. Although the SAC lists Thompson Reuters as a defendant, *id.* ¶ 9, Thompson Reuters is only mentioned again in the prayer for relief, *id.* at 28. Because the SAC states no viable federal claim against Thompson Reuters, the SAC is dismissed as to Thompson Reuters as well.

### F. The Court Denies Leave to Amend the Second Amended Complaint

Having determined that Nemcik's SAC must be dismissed, the Court now analyzes whether to grant leave to amend the SAC.

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962) and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

Here, the Court does not determine whether to grant leave to amend based on the first, second, and fourth factors – (1) undue delay, (2) bad faith or dilatory motive, and (4) undue prejudice to the opposing party. The case is at an early procedural stage and it is not apparent from the record that these factors are applicable to the present case. However, the third and fifth factors – (3) repeated failure to cure deficiencies by amendment and (5) futility of amendment – are applicable to this case.

First, with respect to the third factor – repeated failure to cure deficiencies by amendment, Nemcik filed her first complaint on January 20, 2016 and has had two opportunities for substantive amendments. However, Nemcik has failed to cure deficiencies in order to state a viable federal claim. This factor weighs against granting leave to amend.

Moreover, the Court finds the fifth factor – futility of the amendment – to be dispositive. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). The Ninth Circuit has alternatively stated that the test for whether amendment would be futile is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.*; *see Utterkar v. Ebix, Inc.*, No. 14-02250-LHK, 2015 WL 5027986, at *8 (N.D. Cal. Aug. 25, 2015).

Here, the claims in the SAC would be deficient under the *Rooker-Feldman* doctrine. The allegations in the SAC comprise the same deficiencies as Nemcik's prior complaints, which seek to have this Court review a state court child support and child custody action. Specifically, a review of Nemcik's purported "federal claims" would require the Court to review evidence and determine the correctness of state court rulings. Since the SAC alleges damages caused by the child custody and support decisions, Nemcik could only prevail on her alleged federal causes of action if the family court decisions were determined to be unlawful or wrongly decided. Further, Nemcik's oppositions to Defendants' motion to dismiss proffer no other facts or legal basis that would circumvent the *Rooker-Feldman* doctrine and other grounds on which the motions to dismiss are granted.

In addition, the conspiracy claims are simply not plausible. The SAC alleges a vast conspiracy involving at least four judges in two counties, county agencies, private attorneys, process servers and the state judicial watchdog, the CJP. No facts are alleged to support this conspiracy and the conclusory allegations are based on Nemcik's objection to the outcome of this contentious family law case. Accordingly, a leave to amend the SAC would be futile.

## IV. NEMCIK'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

After Defendants filed their motions to dismiss, Nemcik moved for leave to file a third

16

amended complaint ("TAC") on April 21, 2017. Mot. for Leave to File TAC, ECF 128. The proposed TAC excludes Defendants CJP and Team Legal, and includes the following new Defendants – Contra Costa County, Santa Clara County, Gary Krippendorf, and Brian Krippendorf. ECF 128. The TAC contains both federal and state causes of action. *Id.* The federal causes of action include claims brought under 42 U.S.C. § 1983, the ADA, and 18 U.S.C. § 1962 ("RICO"). *Id.* The state law causes of action include false imprisonment, the Bane Act, products liability, assault, conspiracy to commit fraud and deceit, and intentional infliction of emotional distress. *Id.*

Defendant Stacey Stevens filed the sole opposition to Nemcik's motion for leave to file a TAC.[3] ECF 132. Stevens contends that this Court lacks jurisdiction over Nemcik's causes of action under the *Rooker-Feldman* doctrine. *Id.* at 2. In the alternative, Stevens states that Nemcik should be denied leave to amend as to the third, eighth, ninth, and tenth causes of action for failure to allege facts sufficient to constitute a claim for relief. *Id.*

Federal Rule of Civil Procedure 15 applies here as no scheduling order has been set by the Court to amend the pleadings. *See* Fed. R. Civ. P. 15(a)(2). As stated above, in deciding whether to grant leave to amend, the Court considers whether one or more of the *Foman* factors are present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052.

The Court does not determine Nemcik's motion for leave based on the first, second and fourth factors – (1) undue delay, (2) bad faith or dilatory motive, and (4) undue prejudice to the opposing party. However, the third and fifth factors – (3) repeated failure to cure deficiencies by amendment and (5) futility of amendment – are applicable to this case.

First, with respect to the third factor – repeated failure to cure deficiencies by amendment, Nemcik filed her first complaint on January 20, 2016 and has had two opportunities for substantive amendments. As such, Nemcik has repeatedly failed to cure deficiencies to state a

---

[3] The CJP and Team Legal are not named in the proposed TAC.

viable claim. This factor weighs against granting leave to amend.

Moreover, the Court finds the fifth factor – futility of the amendment – to be dispositive. As noted above, the test for whether amendment would be futile is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller*, 845 F.2d at 214; *see Utterkar*, 2015 WL 5027986, at *8.

Here, the claims in the TAC would be deficient under the *Rooker-Feldman* doctrine. The allegations in the TAC are based entirely on Nemcik's underlying family court proceedings. Like the SAC, the TAC seeks to have this Court adjudicate a state court child support and child custody action. An adjudication of Nemcik's purported "federal claims" would require the Court to review evidence and interpret California state law in the family court decisions. Further, since the TAC alleges damages caused by the child custody and support decisions, Nemcik could only prevail on her alleged federal causes of action if the family court decisions were determined to be unlawful or wrongly decided. Accordingly, the claims alleged in the TAC would be futile.

Separate from the *Rooker-Feldman* doctrine, the Court further finds that the proposed TAC would be futile because the claims asserted therein are deficient for lack of plausible allegations, discussed in more detail below.

## A. Nemcik's Claims under 42 U.S.C. § 1983 (Claims 1, 3(b), and 4)

Nemcik asserts various claims under 42 U.S.C. § 1983 against all Defendants. Claims 1 and 4 are against the County of Contra Costa and the County of Santa Clara and Claim 3(b)[4] is asserted against all Defendants.

Under § 1983, local governments can be sued directly only if the public entity maintains a policy or custom that results in a violation of a plaintiff's constitutional rights. *Monell v. Dep't Soc. Svcs.*, 436 U.S. 658, 690-91 (1958). To impose *Monell* liability under § 1983 for a violation of constitutional rights, a plaintiff must show that: (1) the plaintiff possessed a constitutional right of which he or she was deprived; (2) the municipality had a policy; (3) this policy amounts to

---

[4] Nemcik's third amended complaint includes two causes of action labeled "THIRD CAUSE OF ACTION." As the result, the former third cause of action is referred to as (a) and the latter third cause of action is referred to as (b).

deliberate indifference to the plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *May v. San Mateo Cty.*, No. 16-00252-LB, 2017 WL 1374518, at *11 (N.D. Cal. 2017) (citing *Plumeau v. School Dist. # 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). The Ninth Circuit has explained as follows how a policy may be proved:

> There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*May*, 2017 WL 1374518, at *11 (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks and citations omitted)).

The practice or custom must consist of more than "random acts or isolated events" and instead, must be the result of a "permanent and well-settled practice." *May*, 2017 WL 1374518, at *11 (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1988), *overruled on other grounds by Bull v. City and Cty. of San Francisco,* 595 F.3d 964 (9th Cir. 2010)). Consequently, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless" there is proof that the incident "was caused by an existing, unconstitutional municipal policy . . . ." *May*, 2017 WL 1374518, at *11 (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)).

In certain circumstances, a municipality may be held liable under § 1983 for constitutional violations resulting from its failure to train its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). However, a plaintiff alleging liability to the city for the acts of one of its employees cannot solely rely on the employer-employee relationship. *Id.* at 394. Rather, both fault and causation as to the acts or omissions of the city itself must be sufficiently alleged. *Id.*

### i. Nemcik's Claims 1 and 4

First, Nemcik asks leave to assert her first claim against the County of Contra Costa for violating her Fourteenth Amendment due process rights. TAC ¶ 20. Nemcik offers grounds for such liability based on her child custody action. *Id.* ¶ 14. The TAC states that during the course

of the action she was denied "off record" hearings, public access to records, a fair trial, and was forced to arbitrate. *Id.* ¶¶ 23-26. As a result, Nemcik believes her Fourteenth Amendment rights were violated. *Id.* ¶¶ 23-26.

Second, Nemcik asks leave to assert her fourth claim against the County of Contra Costa and the County of Santa Clara for violating her civil rights. *Id.* ¶ 29, at 28[5]. The TAC states that both counties violated her civil rights by failing "to train, supervise, and discipline any judge, commissioner or official duty of the court." *Id.* The TAC claims that Contra Costa has a "continued practice . . . to allow judges to conspire with attorneys off record and in chambers . . . stating the obvious finding that it denies due process." *Id.* ¶ 35, at 30. Further, the TAC alleges discrimination toward pro se litigants generally, stating that Contra Costa does not provide adequate legal help for pro se litigants. *Id.* ¶ 38, at 31. Nemcik believes that Santa Clara failed to train and supervise employees at the Department of Child Support Services ("DCSS") and the Department of Family and Children Services ("DFCS"). *Id.* ¶¶ 41, 42, at 32.

Though Nemcik argues in her motion that the causes of action in her TAC meet all four *Monell* factors, Mot. for Leave to File TAC, ECF 128, the Court concludes otherwise. Claims 1 and 4 fail to allege at least the second *Monell* factor – that the municipality had a policy – because the alleged constitutional violations are not related to policies of either Santa Clara County or Contra Costa County. Specifically, the purported policies including the counties denying off-the-record hearings, denying public access to court records, denying a fair trial, forcing parties to arbitrate, and failing to train or supervise judges and commissioners are not policies of the two counties. *See* TAC ¶¶ 23-26, at 9-15; 28-46, at 28-34. Rather these are policies of the California Judicial Council. Article IV § 6 of the California Constitution establishes the Judicial Council and defines its role as follows:

> To improve the administration of justice the council shall survey judicial business and make recommendations to the courts, make recommendations annually to the Governor and Legislature, adopt rules for court administration, practice and procedure, and perform other

---

[5] The Court observes that the TAC identifies ¶¶ 1-55 at pages 3-22 and starting at page 22, successive paragraphs are numbered ¶¶ 4-100.

functions prescribed by statute. The rules adopted shall not be inconsistent with statute.

Cal. Const. art. VI, § 6(d). As such, the policies that purportedly violated Nemcik's constitutional rights are not the policies of the Santa Clara and Contra Costa Counties.[6] Consequently, the TAC's first and fourth causes of action fail to raise triable *Monell* claims against the Santa Clara and Contra Costa Counties.

### ii.   Nemcik's Claim 3(b)

Nemcik asks leave to assert her third (b) claim against all Defendants – County of Contra Costa, County of Santa Clara, Stacey Stevens, Thompson Reuters, Brian Krippendorf, and Gary Krippendorf – for violating her First Amendment rights. TAC ¶ 26, at 28. As to the counties, Nemcik states that Defendants Contra Costa County and Santa Clara County are responsible for "judge misconduct" and for judge's retaliating against her using "unlawful harmful court orders." *Id.* ¶ 24, at 27. Nemcik believes that the courts have tried every means to incarcerate her. *Id.* As to the other Defendants – Stacey Stevens, Thompson Reuters, Brian Krippendorf, and Gary Krippendorf – Nemcik believes that they have violated her right to pursue judicial remedies for unlawful government conduct without fear of persecution. *Id.* ¶ 26, at 28. Specifically, Nemcik states that Brian Krippendorf has filed two false police reports in 2016 in an effort to coerce the police to incarcerate her. *Id.* ¶ 23, at 27. More generally, Nemcik states that Defendants have stolen her children, deprived her of companionship, deprived her of property, set orders with the intention of incarcerating her, and either actively engaged in torturing her children or condoned others to do so for the purpose of causing her emotional trauma. *Id.*

As discussed above, there are no viable *Monell* claims against Defendants Santa Clara County and Contra Costa County since the alleged constitutional violations are not related to county policies. Instead, they would related to policies of the California Judicial Council, which is

---

[6] Although California Judicial Council is not named as a defendant in the TAC, the Court notes that the Ninth Circuit has determined that the Judicial Council is a state agency based on the California Constitution's description of its role. *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004). Accordingly, as discussed above in connection with CJP's motion to dismiss, the Eleventh Amendment would bar this suit if it were asserted against the Judicial Council. *See Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (considering court employees as "arms of the State").

a state agency and not a municipal agency. Consequently, the TAC fails to raise a triable *Monell* claim in support of Nemcik's third (b) claim against either Defendants Santa Clara County or Contra Costa County.

Next, the Court considers Nemcik's §1983 allegations against the other non-state actor defendants – Stacey Stevens, Thompson Reuters, Brian Krippendorf, and Gary Krippendorf.

As discussed above in connection with Stevens' motions, to state a claim under §1983, a plaintiff must allege that the defendant was acting under color of state law at the time the acts complained of were committed, that the acts complained of resulted in the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States, and that the plaintiff was damaged as a result. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005). Private persons may act under color of state law if they "willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989). When determining whether a private party acted under color of law, the courts must "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.1999).

Here, Nemcik's allegations against Defendants Stacey Stevens, Thompson Reuters, Brian Krippendorf, and Gary Krippendorf for allegedly violating her First Amendment rights are deficient. Since these defendants are all private persons, Nemick must plausibly allege that they have willfully participated in joint action with state officials to deprive her of constitutional rights. *See United Steelworkers*, 865 F.2d at 1540. However, Nemcik fails to allege any facts in her TAC showing that the defendants have willfully participated in any joint action with state officials to deprive her of constitutional rights. *See* TAC ¶¶ 22-27, at 27-28; *see United Steelworkers*, 865 F.2d at 1540. Further, since the Court must start with the presumption that the conduct of a private party does not constitute governmental action, the TAC fails to assert a plausible § 1983 claim against the private party defendants. *See Sutton*, 192 F.3d at 835.

Accordingly, the TAC fails to raise triable *Monell* claims against all Defendants in support of Nemcik's third (b) claim.

### A.    Nemcik's ADA Title II Claims (Claims 2 and 3(a))

Nemcik asks leave to assert her second and third causes of action for violation of the ADA Title II against Contra Costa County and Santa Clara County, respectively.  TAC ¶¶ 41, at 19; 4 at 22.

As to Nemcik's second ADA cause of action against Contra Costa County, the TAC alleges that Nemcik is disabled under the ADA because she is "substantially limited in her ability to work." *Id.* ¶ 39, at 18.  The TAC also states that "basic questions [such as] 'How are your kids?' or 'How are you?' can trigger anxiety and cause [Nemcik] to withdrawal." *Id.*  The TAC further alleges that Nemcik requested ADA accommodations of a support person, a recording device, and additional time if needed to take breaks. *Id.* ¶¶ 41-42, at 19.  The TAC avers that these requests were reasonable and did not create undue hardship or cost for Contra Costa County. *Id.* According to the TAC, Judge Fannin denied her accommodation requests even though "she knew of [her] disability before and after she filed for accommodations." *Id.* ¶ 44, at 19.  Nemcik cites to a letter from the Superior Court of California in Contra Costa County on July 29, 2014 to support her claims.  The letter stated that the court needed more information regarding the nature of her disability.  Ex. NN376 to TAC, ECF 128-5.  Although the Contra Costa Superior Court denied Nemcik's request to bring in an ADA advocate to attend hearings, it recommended that she request a support person. *Id.*  It further explained that it denied Nemcik's request because bringing in an ADA Advocate would fundamentally alter the nature of the service, program, or activity. *Id.*

As to Nemcik's third (a) ADA cause of action against Santa Clara County, the TAC asserts that the "Santa Clara Superior Court apparently has a custom where the Judges tell the ADA Coordinator what they can and cannot grant as an accommodation." TAC ¶ 5, at 23.  The root of this claim lies in alleged denial of Nemcik's requested accommodations. *Id.*  Specifically, Nemcik believes that Santa Clara Superior Court "Commissioner Mills denied [her of] having a recording device" and "tools that would enable her to understand the calculation used to set the child support." *Id.* ¶ 8, at 23.  The TAC purports that Commissioner Mills knowingly used Nemcik's disability as a "means to trigger and aggravate her disabilities for the purpose of rendering her incapable of effectively litigating her case." *Id.* ¶ 10, at 24.  Nemcik states that

because she was denied accommodations, she could not verify the numerical inputs that Commissioner Mills used to calculate child support. *Id.* ¶ 11, at 24.

In order to properly state a claim under ADA Title II, a plaintiff must show that (1) she is a qualified individual with a disability, (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of her disability. *Weinreich v. Los Angeles Country Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Here, the TAC alleges conduct by the state courts as evidence of the counties' violation of her rights. As discussed above, the state court is not a county agency, but rather a state agency. Accordingly, the ADA claims are deficient for failing to plausibly allege that Nemcik was discriminated against by Contra Costa County or by Santa Clara County.

**B.    Nemcik's RICO Claims (Claim 5)**

Nemcik asks leave to assert RICO claims as her fifth cause of action against Defendants Contra Costa and Santa Clara Counties. The TAC alleges that Defendants "create unlawful debt by ordering child support payment that a parent does not have the ability to pay for the purpose of creating arrears." TAC ¶ 49, at 34. The TAC states that such conduct of the judges and commissioners "purposely sets child support at an amount higher than a parent can afford." *Id.* ¶ 50, at 34-35. Moreover, the TAC alleges that the "purposeful acts" to create high amounts of arrear and child support is a result of "racketeering activities in both Contra Costa and Santa Clara." *Id.* Nemcik believes that the DCSS has converted payments that they took from her for the "sole purpose to give to Brian Krippendorf, but which they did not." *Id.* ¶ 55, at 36 (citing Ex. C).

Under § 1962(c) it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." A successful claim under § 1962(c) thus requires evidence of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). According to § 1961(1), the

definition of "racketeering activity" encompasses significant portions of Title 18 of the U.S. Code; however, it does not include any provision related to child support calculations. *See* 18 U.C.S. § 1961(1).

Here, the TAC does not state a specific "predicate act" listed in Title 18 of the U.S. Code. *See* 18 U.S.C. §§ 1961(1) (defining "racketeering activity"). Though Nemcik relies heavily on "unlawful debt" as a predicate act to establish a RICO claim in her TAC, 18 U.S.C. §1961(6) defines "unlawful debt" solely in the context of gambling or money lending and is therefore not applicable to this case. 18 U.S.C. § 1961(6) provides:

> 'Unlawful debt' means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

While Nemcik believes that the DCSS has converted money, and claims "unlawful debt" as a predicate RICO act, TAC ¶ 55 (citing Ex. C), such an alleged act does not fall under "racketeering activity" as defined under 18 U.S.C. § 1962. Further, the TAC alleges a RICO enterprise based solely on the regular activities of DCSS, the courts, private attorneys, and parties to a family law case. That conduct is not plausibly racketeering activity. As such, the TAC fails to state a cognizable RICO claim.

**C.      Nemcik's State Law Claims (Claims 6, 7, 8, 9, and 10)**

Based on the foregoing, the Court concludes that amendment of all the federal claims in Nemcik's proposed TAC would be futile. Though the TAC asserts state causes of action – false imprisonment, the Bane Act, products liability, assault, conspiracy to commit fraud and deceit, and intentional infliction of emotional distress[7] – without a viable federal cause of action, the Court would decline to exercise supplemental jurisdiction over Nemcik's state law claims in the

---

[7] The Court notes that the TAC labels these claims as 42 U.S.C. § 1983 claims, but based on the allegations, they are not civil rights claims and are deemed state law claims.

proposed TAC.  *See* 28 U.S.C. § 1367(a).  Accordingly, the Court need not analyze whether the state law claims sought to be amended by Nemcik would be futile.

**V.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.   Stevens' motion to strike is GRANTED without leave to amend.

2.   Stevens' motion to dismiss is GRANTED without leave to amend.

3.   Commission on Judicial Performance's motion to dismiss is GRANTED without leave to amend.

4.   Team Legal's motion to dismiss is GRANTED without leave to amend.

5.   The SAC is dismissed as to Thompson Reuters.

6.   Nemcik's motion for leave to file a third amended complaint is DENIED.

Dated: June 30, 2017

BETH LABSON FREEMAN
United States District Judge